**AMERMED CORPORATION, a Georgia corporation, Plaintiff,**

v.

**DISETRONIC HOLDING AG, a Swiss corporation; Disetronic Medical Systems AG, A Swiss corporation; and Disetronic Medical Systems, Inc., a Minnesota corporation, Defendants.**

No. CIV.A.1:1997–CV–2270–RWS.

United States District Court,
N.D. Georgia,
Atlanta Division.

July 21, 1998.

Daniel I. MacIntyre, IV, Samuel Tillman Brannan, Wilson, Strickland & Benson, Atlanta, GA, for Plaintiff.

William Henry Boice, William Franklin Long, III, Kilpatrick Stockton, Atlanta, GA, for Defendants.

## OPINION and ORDER

STORY, District Judge.

This diversity breach of contract and business tort action is before the Court on Defendants' Motion [6–1] to Dismiss, Plaintiff's Motion [14–1] to Dismiss Counterclaims, and various motions [12–1, 19–1, 27–1] requesting leave to file lengthy or supplemental briefs.

### I. Background

According to the allegations of the Complaint, this action arises out of a business relationship in which Plaintiff AmerMed Corporation ("AmerMed") contracted with Defendant Disetronic Medical Systems AG ("DMSAG") to act as a distributor in the United States of its medical infusion pump (the "pump"). DMSAG is a Swiss corporation and wholly-owned subsidiary of Defendant Disetronic Holding AG (DHAG), also a Swiss corporation, which also wholly owns Defendant Disetronic Medical Systems, Inc. ("DMSI"), a Minnesota corporation.

AmerMed contends that DMSI maintains offices and staff in the State of Georgia and that it acted as agent for DMSAG and DHAG in inducing AmerMed to enter into the Distribution Agreement dated April 22, 1996, and in other matters relative to performance under the Distribution Agreement. AmerMed further contends that in all matters relevant to this action the various defendants acted in concert and under common control in a common endeavor and as mutual agents and partners, as evidenced by the participation of employees of all three corporate entities in various aspects of the business relationship. AmerMed contends that several employees of the Swiss corporations, identified by name in the Complaint, traveled to Georgia in connection with the events described in the Complaint.

According to AmerMed, the pumps which DMSAG delivered did not meet the specifications or performance terms contained in the Distribution Agreement. Again according to AmerMed, it strove to resolve the disputes regarding the adequacy of the pump, but failed, resulting in its inability to market the pump in the United States and resulting in damages to AmerMed of approximately $9,000,000. Thus, AmerMed has asserted claims for breach of warranty and breach of contract. In addition, AmerMed has asserted a claim for anticipatory breach of contract based on a letter from DMSAG stating, among other things, "Disetronic hereby declares the distribution contract of April 22, 1996, including all agreements made in connection therewith and following thereupon ... to be nonbinding or declares withdrawal from these contracts." Finally, based on representations regarding the specifications and performance of the pump, made in connection with negotiations leading up to the execution of the Distribution Agreement and thereafter, AmerMed has asserted claims for fraudulent and negligent misrepresentations.

### II. Discussion

The Defendants have moved [6–1] to dismiss for improper venue, pursuant to Fed. R.Civ.P. 12(b)(3), and under the doctrine of

forum non conveniens.[1] They base their motion on a forum selection clause contained in the Distribution Agreement that reads, as follows:

13.2 *Forum:* For the sole benefit of Disetronic the parties agree, that the courts of the canton of Berne, Switzerland, shall have jurisdiction for all disputes arising out between the parties and waive any claim to the contrary.

AmerMed contends that the forum selection clause is permissive, not mandatory, and that in any event the Defendants are barred from relying on it by their repudiation of the contract.

A. *Venue*

As jurisdiction in this action is based solely in diversity, the initial question is whether state or federal law governs resolution of the motion to dismiss for improper venue. *See Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *Erie R .R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Defendants contend that this Court should determine, first, whether the forum selection clause is exclusive or permissive based upon the contractual choice of Swiss law, which they contend Georgia would apply, and, second, whether the clause is enforcible under

federal law, applying the criteria outlined in *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972). Without explicitly discussing *Erie,* or its progeny, AmerMed contends that the issue is one of "procedure" to be determined by reference to federal common law, but then relies upon Georgia law for the proposition that Defendants have waived or are estopped from relying on the forum selection clause.

The apparent confusion as to the applicable law is understandable. Federal courts are split as to whether state or federal law should govern enforcement of a forum selection clause when a federal court is sitting in diversity.[2] Scholars are similarly adrift.[3]

The primary federal venue statute, 28 U.S.C. § 1391 permits a diversity action to be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2). Certainly, within the meaning of those provisions of federal law permitting dismissal for "improper" venue, *see* Fed. R.Civ.P. 12(b)(3), or of a case laying venue in the "wrong" division or district, *see* 28 U.S.C. § 1406(a), venue in this Court is not statutorily defective. *See Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 28 n. 8, 108 S.Ct. 2239, 2243 n. 8, 101 L.Ed.2d 22 (1988) (dicta).

1. Defendants have withdrawn that portion of their motion to dismiss based on AmerMed's alleged failure to comply with an arbitration clause.

2. *See, e.g., Lambert v. Kysar,* 983 F.2d 1110, 1116 (1st Cir.1993) (calling the application of the *Erie* doctrine to domestic forum selection clause a "daunting question" and declining to decide the issue because all potentially applicable law would yield the same result); *Spradlin v. Lear Siegler Mgmt. Serv, Co., Inc.,* 926 F.2d 865, 867–68 (9th Cir.1991) (applying federal common law to clause selecting Saudi Arabian forum); *Jones v. Weibrecht,* 901 F.2d 17, 18–19 (2d Cir.1990) (applying federal common law to clause selecting state-court forum); *Instrumentation Assoc., Inc. v. Madsen Electronics (Canada) Ltd.,* 859 F.2d 4, 6–8 (3d Cir.1988) (declining to decide the issue with respect to clause selecting Canadian forum because all potentially applicable law, including Canadian, would yield the same result); *Manetti–Farrow, Inc. v. Gucci America, Inc.,* 858 F.2d 509, 512–13 (9th Cir.1988) (holding that the issue is procedural and governed by federal law); *Farmland Industries v. Frazier–Parrott Commodities, Inc.,* 806 F.2d 848, 851–52 (8th Cir.1986)

(applying state law); *General Engineering Corp. v. Martin Marietta Alumina, Inc.,* 783 F.2d 352, 356–57 (3d Cir.1986) (applying state law). *See also Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 38–41, 108 S.Ct. 2239, 2248–49, 101 L.Ed.2d 22 (1988) (Scalia, J., dissenting) (Justice Scalia would apply state law to 28 U.S.C. § 1404(a) motion to transfer).

3. *See, e.g.,* George A. Davidson, *Jurisdiction Over Non–U.S. Defendants, in Practicing Law Institute Litigation and Administrative Practice Course Handbook Series; Litigation—International Commercial Litigation* at 74–82 (1998); Young Lee, Note, *Forum Selection Clauses: Problems of Enforcement in Diversity Cases and State Courts,* 35 Colum. J. Transnational Law 663 (1997); Leandra Lederman, Note, *Viva Zapata: Toward a Rational System of Forum–Selection Clause Enforcement in Diversity Cases,* 66 N.Y.U. L.Rev. 422 (1991); Richard D. Freer, *Erie's Midlife Crisis,* 63 Tulane L.Rev. 1087 (1989); Robert A. deBy, *Forum Selection Clauses: Substantive or Procedural for Erie Purposes,* 89 Colum. L.Rev. 1068 (1989); Linda S. Mullenix, *Another Choice of Forum, Another Choice of Law; Consensual Adjudicatory Procedure in Federal Court,* 57 Fordham L.Rev. 291 (Dec.1988).

In *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. at 15, 92 S.Ct. at 1916, however, the Supreme Court, sitting in admiralty, held that a mandatory forum selection clause reading, "Any dispute arising must be treated before the London Court of Justice," was prima facie valid and enforcible through a motion to dismiss absent a showing by the complaining party "that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching."

Thereafter, the Eleventh Circuit applied *The Bremen* in diversity actions, without considering whether the determination of applicable law in any way raised issues under *Erie. See Citro Florida, Inc. v. Citrovale, S.A.,* 760 F.2d 1231 (11th Cir.1985); *Keaty v. Freeport Indonesia, Inc.,* 503 F.2d 955 (5th Cir.1974).

■ In 1988, however, in a case involving a motion to enforce a domestic forum selection clause through transfer to another federal forum pursuant to 28 U.S.C. § 1404(a), the Supreme Court insisted on an *Erie* analysis of the issue. *See Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). In such an analysis, the first question is whether a federal statute controls the issue. 487 U.S. at 28–29, 108 S.Ct. at 2243. "If no federal statute or Rule covers the point in dispute, the district court then proceeds to evaluate whether application of federal judge-made law would disserve the so-called 'twin aims of the *Erie* rule: discouragement of forum shopping and avoidance of inequitable administration of the laws.' If application of federal judge-made law would disserve these two policies, the district court should apply state law." 487 U.S. at 27 n. 6, 108 S.Ct. at 2243 n. 6 (quoting *Hanna v. Plumer,* 380 U.S. at 468, 85 S.Ct. at 1142).

■ Here, we are faced with the situation described in the footnote in *Ricoh,* in which no federal statute or Rule covers the point in dispute. Contrary to 28 U.S.C. § 1404(a), at issue in *Ricoh,* which outlines criteria pursuant to which a court must determine whether to transfer an action to another federal court, the provisions governing dismissal for "improper" or "wrong" venue are silent as to dismissal for any ground other than statutorily deficient venue. *See* 28 U.S.C. § 1406(a); Fed.R.Civ.P. 12(b)(3). Thus, it is necessary to evaluate the outcome under both the federal judge-made law—*The Bremen* and its progeny—and Georgia state law. As *The Bremen* has been applied in the Eleventh Circuit, the first step is to determine whether the clause is mandatory or merely permissive, a determination which is made without reference to the contractual choice of law clause. *See, e.g., Creative Tile Marketing, Inc. v. SICIS International, S.r.L.,* 922 F.Supp. 1534, 1538 (S.D.Fla.1996). *Accord Caldas & Sons, Inc. v. Willingham,* 17 F.3d 123, 127–28 (5th Cir.1994). *See also The Bremen,* 407 U.S. at 20, 92 S.Ct. at 1918 (rejecting the argument that the clause at issue did not provide for an "exclusive" forum and characterizing the clause as "clearly mandatory and all-encompassing"). Where a forum selection clause is ambiguous regarding exclusivity, it will be construed more strongly against the party who drafted the clause. *See Citro Florida,* 760 F.2d at 1231–32 (the clause, "Place of jurisdiction is Sao Paulo/Brazil," was construed against the drafter as permissive, not mandatory); *Keaty,* 503 F.2d at 956–57 (the clause, "the parties submit to the jurisdiction of the courts of New York," was construed as permissive, not mandatory); *Creative Tile* (without reference to the contractually applicable law of Italy, the court construed the clause, "all disputes arising from or connected with this Agreement, except those referred to Article 3, sub 3, shall fall within the jurisdiction of the competent judge of 47023 Ronta Cesena, Italy," as permissive, not mandatory). If the forum selection clause is merely permissive, the action will not be dismissed; if the forum selection clause is mandatory, it will be enforced as required by *The Bremen. See Citro Florida,* 760 F.2d at 1231; *Keaty,* 503 F.2d at 956–57.

Similarly, Georgia has adopted the rule of *The Bremen* in cases where no Georgia law specifically governs venue and where more than one state and its citizens are involved. *See Brinson v. Martin,* 220 Ga.App. 638, 469 S.E.2d 537 (1996); *Harry S. Peterson Co., Inc. v. National Union Fire Ins. Co.,* 209 Ga.App. 585, 434 S.E.2d 778 (1993). Again, such clauses are interpreted without refer-

ence to the contractual choice of law clause. *Brinson,* 220 Ga.App. at 638–39, 469 S.E.2d at 538. While Georgia courts apparently have not applied the same permissive/mandatory analysis as the Eleventh Circuit, the Georgia Court of Appeals has refused to enforce a forum selection clause that was so broad it failed to reflect that the parties had reached agreement on the applicable forum. *See Central Ohio Graphics, Inc. v. Alco Capital Resource, Inc.,* 221 Ga.App. 434, 472 S.E.2d 2, *cert. denied* (1996). Thus, it does not appear that application of federal law under the circumstances of this case would lead to forum shopping or inequitable administration of law.

■] Here, the forum selection clause was put in final form by DMSAG, and the clause does not use language indicating exclusivity. Accordingly, this Court finds that the forum selection clause at issue in this litigation is permissive, permitting litigation in Switzerland but not requiring such, and that it therefore is not enforcible through the vehicle of a motion to dismiss for improper venue.

### B. *Forum non conveniens*

■ The doctrine of forum non conveniens permits a United States court to decline to exercise its jurisdiction over a case when a foreign tribunal can more appropriately conduct the litigation. *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 248–61, 102 S.Ct. 252, 262–68, 70 L.Ed.2d 419 (1981); *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). *See also American Dredging Co. v. Miller,* 510 U.S. 443, 448 n. 2, 114 S.Ct. 981, 986 n. 2, 127 L.Ed.2d 285 (1994) (federal doctrine of forum non conveniens has continuing application only where alternative forum is abroad).

The Supreme Court has identified the competing private and public interests to be considered in determining whether to dismiss an action on the ground of forum non conveniens.

> If the combination and weight of factors requisite to given results are difficult to forecast or state, those to be considered are not difficult to name. An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, "vex," "harass," or "oppress" the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

> Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Gulf Oil,* 330 U.S. at 508–09, 67 S.Ct. at 843.

AmerMed opposes the motion to dismiss for forum non conveniens on the grounds that the Swiss law would require it to pay in advance a bond for court costs in the amount of approximately $38,000, as well as a bond for Defendants' legal fees in the amount of approximately $255,000, because the bulk of relevant witnesses and physical evidence are located in Georgia, because the bulk of the documents are written in English, and be-

cause federal and Georgia law apply to this action based on DMSI.G's repudiation of the agreement.

Certainly this Court is cognizant of the weight to be accorded AmerMed's choice of this forum and the cost attendant to any dismissal based on forum non conveniens. Most of the cost to litigate this international action, however, will exist regardless of the forum in which it is litigated. Even if the action is litigated in the United States, AmerMed will face the cost of experts on Swiss law and international discovery,[4] as is amply indicated by the influx of affidavits regarding Swiss law on the issues raised in the pending motion to dismiss. In any event, AmerMed contemplated that cost and inconvenience, and presumably bargained with that cost in mind, when it agreed to submit to the jurisdiction of Swiss courts. *See, e.g., Stewart Org., Inc. v. Ricoh Corp.,* 810 F.2d 1066, 1075 (11th Cir.1987) (Tjoflat, J. concurring), *aff'd on other grounds,* 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) ("The law of contracts presumes that Ricoh has already compensated Stewart, through lowered costs or some other method, for any inconvenience that Stewart or its witnesses might suffer by trying the case in New York."). Moreover, Defendants have offered to waive the bond for attorneys' fees, reducing the bond requirement to $38,000, a cost AmerMed is likely to incur in any event in connection with parallel litigation already in process in Switzerland.

In addition, despite the extensive affidavits from experts on Swiss law, this Court is left with diametrically opposed information regarding how Swiss courts would interpret and enforce the forum selection and choice of law clauses as well as whether Swiss courts would enforce against the Swiss defendants any judgment that this Court might render on the merits of the claims asserted here. This inability of the parties to agree even on the governing law as to these issues, much less on how that law should be interpreted and applied, does not bode well for future litigation in this forum, in which the Court will be dependent upon the parties for information as to the applicable Swiss law.

At best, this Court is left with grave doubts as to the enforcibility in Switzerland of any judgment it might render. While AmerMed has stated to the Court in oral argument that it has little concern for that problem because it anticipates being able to execute against the American defendant DMSI, this Court is disinclined to engage in complex international litigation on the chance that a judgment in this action might be enforcible against an entity that is not a party to the Distribution Agreement. The resources of this Court ought not to be depleted as this case would require for what is likely to be an academic exercise.

Nevertheless, the Court is concerned that AmerMed not suffer unnecessary prejudice as a result of any change in forum. Therefore, this Court will grant the motion to dismiss for forum non conveniens subject to the conditions described below. *See generally Piper Aircraft,* 454 U.S. at 257 n. 25, 102 S.Ct. at 267 n. 25 ("In the future, where similar problems are presented, district courts might dismiss subject to the condition that defendant corporations agree to provide the records relevant to the plaintiff's claims."). *See also Magnin v. Teledyne Continental Motors,* 91 F.3d 1424, 1429–31 (11th Cir.1996) (affirming conditional dismissal).

### III. *Conclusion*

For the foregoing reasons, it is hereby ORDERED that:

1. The parties' motions [12–1, 19–1, 27–1] to file supplemental or lengthy briefs are GRANTED:

2. Defendant's Motion [6–1] to Dismiss for forum non conveniens is GRANTED, subject to the following conditions, to which Defendants will be deemed to have agreed unless they file a timely motion for reconsideration of this Order:

   a. Each Defendant agrees to submit to the jurisdiction of the Swiss courts and to accept service of process therefrom;

---

4. Implicit in this finding is the conclusion that AmerMed has failed to persuade the Court that the Defendants' purported repudiation of the Distributorship Agreement would permit the Court to overlook the Swiss choice of law provision.

b. Each Defendant will, if so served, be bound to pay final judgments rendered against it by the Swiss courts relating to the claims raised in this action;

c. Each such defendant will not, in raising any statute of limitations or similar defense in the Swiss courts, include the period that this action was pending against it in this Court;

d. Each Defendant agrees to make available in the Swiss forum all relevant witnesses, depositions, and documents within its possession, custody, or control to the same extent they would be available in this forum;

e. All Defendants agree to waive the bond for attorneys' fees permitted under Swiss law; and

3. Plaintiff's Motion [14–1] to Dismiss Counterclaims is DENIED as MOOT.

The Clerk is directed to enter final judgment accordingly.